UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
SAMUEL HUGHES,                 )
                               )
                  Plaintiff,   )
                               )
        v.                     )    Civil Action No. 04-1246 (RBW)
                               )
CACI, INC. - COMMERCIAL, et al.,¹ )
                               )
                  Defendants.  )
_____)
```

**MEMORANDUM OPINION**

The plaintiff, Samuel Hughes, brings this action against his former employer, CACI, Inc.-Commercial ("CACI"), and two of its employees,² alleging (1) discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., (2) violations of the Fair Labor Standards Act, 2 U.S.C. § 216(b), and (3) the defendant's failure to comply with the "Common Law of the District of Columbia." Complaint ("Compl.") ¶ 2. Currently before the

---

¹ The plaintiff's complaint identifies "CACI, Inc." as one of the defendants. Pl.'s Compl. ¶ 1. In the defendants' motion that is the subject of this opinion, the defendants seek an order from this Court to change the case caption to reflect the defendants' proper corporate name: "CACI, Inc. - Commercial." Defs.' Mot. at 2. The plaintiff does not object to this motion; accordingly, it is granted.

² In addition to CACI, the plaintiff appears also to be suing Colleen Lurwick and Tyburn Debellotte in their individual capacities, as opposed to their capacities as employees of CACI. Because Title VII applies to employers only, and not individual employees and supervisors, 42 U.S.C. § 2000e(b), the plaintiff can not maintain an action against the individually named defendants, see Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir. 1995) (holding that "an employee must be viewed as being sued in his capacity as an agent of the employer, who is alone liable for a violation of Title VII"). Moreover, any additional claims the plaintiff may wish to file against the CACI employees are encompassed by the broad arbitration agreement which this Court holds to be valid and binding. See Brick v. J.C. Bradford & Co., 677 F. Supp. 1251, 1257 (D.D.C. 1987) (holding that an arbitration agreement contained in a Customer Agreement, extended to the defendant company's employees despite the fact that they were not explicitly named in the agreement as beneficiaries of the arbitration clause). Therefore, this Court must dismiss the plaintiff's Title VII claims against the individually named defendants.

-1-

Court is the defendants' Motion to Dismiss and Compel Arbitration ("Defs.' Mot."); the defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiff's Complaint and Compel Arbitration and to Correct Case Caption ("Defs.' Mem."); the plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint ("Pl.'s Opp'n"); and the defendants' Reply to Plaintiff's Motion Opposing Defendants' Motion to Dismiss Plaintiff's Complaint ("Defs.' Reply").  For the reasons set forth below, this Court concludes that the plaintiff must submit his claims to CACI's internal mediation process, and if necessary, binding arbitration, in accordance with the Employment Agreement ("EA") he signed. Accordingly, this case will be dismissed.

**I.      Factual Background**

Samuel Hughes commenced his employment with CACI as a paralegal in January 1997 and was promoted to the position of Project Manager in 2000.  Compl. ¶ 12.  CACI provided support services to the Department of Justice ("DOJ"), and after his promotion, the plaintiff was responsible for supervising up to twenty paralegals and managing multiple cases in which the DOJ was a party.  Id.  In 2003, one of the cases the plaintiff was assigned to supervise went to trial.  Id. ¶ 13.  During the trial, however, there were several mistakes committed in regards to the legal support services provided to the DOJ by CACI employees.  Id. ¶¶ 13-17.  In each instance when a mistake was made, the plaintiff was held responsible.  Id.  Because the DOJ attorneys were displeased with the service CACI had provided, CACI eventually terminated the plaintiff's employment.  Id. ¶ 18.  The plaintiff alleges, however, that the mistakes were in fact committed by others, all of whom are white.  Id. ¶¶ 13-17.  Thus, the plaintiff posits that his race was the motivating factor for his termination because the employees who actually committed the errors

were not terminated, but he was.  Id. ¶ 20.

Following his termination, the plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), which subsequently issued a notice of the plaintiff's right to sue.  Id. ¶ 4.  Thereafter, on July 26, 2004, the plaintiff filed this action alleging he was terminated, while white CACI employees, who actually committed the errors he was held responsible for were not.  Thus, the plaintiff asserts that his termination was in violation of Title VII and the District of Columbia Human Rights Act ("DCHRA").  Id. ¶¶ 19-26.  In addition, the plaintiff contends that the defendants created a discriminatory and hostile working environment, which intentionally caused him to sustain emotional distress.  Id. ¶¶ 22, 24.  The defendants now seek to dismiss this action due to the plaintiff's failure to comply with the arbitration clause contained in the EA which he signed when he commenced his employment.  Defs.' Mot. at 1-2.

## II.  Standard of Review

The defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim upon which relief can be granted.  Defs.' Mot. at 1.  This Court concludes, however, as have many others, that a motion to compel arbitration is properly reviewed under the summary judgment standard of Rule 56(c).

"Pursuant to § 4 of the Federal Arbitration Act . . . , 9 U.S.C. § 1, et seq. (2000), [a] defendant is entitled to 'petition . . . [the] district court which, save for [an employment] agreement, would have jurisdiction . . . [to issue] an order directing that such arbitration proceed in the manner provided for in [the employment] agreement.'"  Brown v. Whitney, 267 F. Supp. 2d 61, 66 (D.D.C. 2003).  "The [Federal Arbitration] Act itself does not state that a document

entitled 'motion to compel' must be filed to trigger the protections of the [Federal Arbitration] Act, but states that the party must 'petition' the court for an order directing arbitration to proceed." Thompson v. Nienaber, 239 F. Supp. 2d 478, 483 (D.N.J. 2002). Because strict nomenclature regarding how a motion is titled is not required, "inasmuch as the district court's order to arbitrate is in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate[,]" consideration of the motion according to the "standard used by district courts in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c) . . . is appropriate." Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n.9 (3d Cir. 1980). Thus, "[a]lthough styled as a motion to dismiss, in a motion to stay proceedings and/or compel arbitration, the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c)." Technetronic v. Leybold-Geaeus GmbH, 1993 WL 197028, at *2 (E.D. Pa. 1993) (citations omitted); see also Lok Tio v. Wash. Hosp. Center, 2004 WL 2663149, at *2-3 (D.D.C. 2004); Nelson v. Insignia/Esg, Inc., 215 F. Supp. 2d 143, 147 (D.D.C. 2002) (holding that "summary judgment [was] the proper procedural mechanism to use in evaluating whether the plaintiff must submit her claims to arbitration"). Accordingly, this Court will review the motion to compel under a summary judgment standard.[3]

---

[3] The defendants have provided the Court with documents that were not attached to the complaint—namely: the parties' EA (Defs.' Mem., Ex. A), the defendants' dispute resolution policy, (Defs.' Mem., Ex. B), and the declaration submitted by CACI's Senior Vice President and Director of Administrative Service, (Decl. of Patrick G. Stefl)—for the Court's consideration in addressing the defendants' motion. Generally, when a district court converts a motion to dismiss to a motion for summary judgment, notice and the opportunity to supplement the record must be afforded. Gordon v. Nat'l Youth Work Alliance, 675 F.2d 356, 361 (D.C. Cir. 1982) ("Under either Rules 12(b)(1) or 12(b)(6), a court need not consider matters outside the pleadings at all. But once it decides to consult such matters it should so inform the parties and set a schedule for submitting additional affidavits and documents if the parties wish."). That was not necessary here, however, because the Court is not actually affecting a conversion for a review under Rule 56, but is rather construing the motion for what it really is—a motion

(continued...)

This Court will grant a motion for summary judgment under Rule 56(c) if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, this Court must view the evidence in the light most favorable to the non-moving party. Bayer v. United States Dep't of Treasury, 956 F.2d 330, 333 (D.C. Cir. 1992). However, the non-moving party cannot rely on "mere allegations or denials . . . , but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation omitted). Under Rule 56, "if a party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial" summary judgment is warranted. Hazward v. Runyon, 14 F. Supp. 2d 120, 122 (D.D.C. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). The party moving for summary judgment bears the burden of establishing the absence of evidence to support the non-moving party's case. Id. In considering a motion for summary

---

³(...continued)
to compel arbitration pursuant to 9 U.S.C. § 4—and applying the Rule 56 standard of review in addressing the merits of the motion. See Thompson, 239 F. Supp. at 484 (holding that when the parties would present the same arguments in a motion to dismiss and a motion to compel arbitration, the court may "avoid . . . 'hypertechnical'" ruling[s] that would "lead to duplicative litigation") (citation omitted). Moreover, here the plaintiff was aware that the defendants were seeking to have the Court compel arbitration and he received a copy of his EA and CACI's dispute resolution policy. It is unlikely that the parties did not submit everything relevant to the subject of the EA and the arbitration clause, and accordingly, there is no reason to delay issuing a decision on the arbitration question. See Hollis v. Dep't of Army, 856 F.2d 1541, 1544 (D.C. Cir. 1988) (holding that the district court did not err in converting the defendant's motion to dismiss into one for summary judgment without providing notice to the parties and the opportunity to submit additional materials, because "no useful purpose can be served . . . where it is clear that the dispositive facts will remain undisputed and unchanged. By the same token, no prejudice can result from its nonobservance in any situation of that sort"); see also Snow v. BE & K Constr. Co., 126 F. Supp. 2d 5, 7 (D. Me. 2001) (converting the defendant's motion to dismiss or, alternatively, to compel arbitration, into one for summary judgment was proper because "[i]t is within the [c]ourt's discretion to convert the 12(b)(6) motion to a summary judgment motion because the [p]laintiff has had an opportunity to respond to the relevant factual allegations raised by [the] [d]efendant") (citing Whiting v. Maiolini, 921 F.2d 5, 6 (1st Cir. 1990)).

judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). When reviewing the defendants' motion to compel arbitration, the Court must "give . . . the [plaintiff] the benefit of all reasonable doubts and inferences that may arise." Par-Knit Mills, Inc., 636 F.2d at 54. It is with this standard that the Court will evaluate the defendants' position that the plaintiff must submit his claims to CACI's internal mediation, and if necessary, to arbitration.

### III. The Parties' Arguments

The defendants seek to dismiss the plaintiff's complaint pursuant to the Federal Arbitration Act ("FAA") due to his failure to comply with the Arbitration Clause contained in the EA, which he signed on January 27, 1997, when he commenced his employment at CACI. Defs.' Mem. at 2. The defendants maintain that the plaintiff voluntarily agreed to arbitrate any potential discrimination claim arising out of his employment with CACI. Defs.' Mem. at 2. To support their motion to compel arbitration, the defendants rely on paragraph eleven of the EA which reads in part:

> Any controversy or claim arising out of, or relating to this Agreement, or its breach, or otherwise arising out of or relating to my CACI employment (including without limitation to any claim of discrimination whether based on race . . . or any other legally protected status, and whether based on federal or State law, or otherwise), shall be settled first by resort to mediation by CACI's Ombudsman and then, if mediation fails to resolve the matter, by arbitration. This arbitration shall be held in Arlington, Virginia in accordance with the model employment arbitration procedures of the American Arbitration Association. Judgment upon award rendered by the arbitrator shall be binding upon both parties and may be entered and enforced in any court of competent jurisdiction.

Defs.' Mem., Ex. A ¶ 11. Furthermore, the defendants argue that the EA is a legally binding,

contractual agreement which, in the absence of special circumstances, this Court must honor. Defs.' Mem. at 7.  Since the defendants argue that no such circumstances exist, they ask this Court to dismiss this complaint and compel the plaintiff to adhere to his contractual agreement to arbitrate.  Id. at 7-8.  Finally, the defendants argue that the arbitration clause is broad enough to cover the allegations raised in the plaintiff's complaint.  Id. at 9.  And, the defendants note that it is well-established jurisprudence that statutory claims, including claims arising under Title VII, may be subject to arbitration.  Id. at 10.

The plaintiff asserts, however, that the arbitration clause does not apply in this situation. The plaintiff advances four arguments.  First, the plaintiff contends that the arbitration agreement is not a binding, contractual obligation, but simply a CACI policy that is not binding on the plaintiff.  Pl.'s Opp'n at 2.  Second, the plaintiff argues that the arbitration clause is applicable only to current CACI employees, and that a reasonable person would not interpret the arbitration clause to encompass issues flowing from a wrongful termination.  Id. at 3.  Third, the plaintiff posits that the EEOC's process supercedes the EA's arbitration clause, and therefore this Court is the appropriate venue in which to adjudicate his claims.  Id. at 1.  Finally, the plaintiff contends that the defendants have waived any right to arbitration by not raising the issue during the EEOC's process.  Id.

## IV. Analysis

In addressing the plaintiff's specific concerns regarding the arbitration clause contained in CACI's EA, the Court must analyze the "arbitration agreement under the FAA and applicable state law to determine whether (1) the parties entered into a valid and enforceable arbitration agreement and, if they did, (2) does the . . . agreement encompass the claims raised in the

complaint?" Nelson, 215 F. Supp. 2d at 149-50 (D.D.C. 2002). It is helpful to start with a discussion of the FAA.

Section 2 of the FAA provides that the arbitration provisions in any "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration . . . and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991). Additionally, "[t]he FAA creates a strong presumption favoring the enforcement of arbitration agreements, and doubts regarding the scope of an arbitration agreement must be resolved in favor of arbitration." Booker v. Robert Half Int'l, Inc., 315 F. Supp. 2d 94, 97 (D.D.C. 2004); see also Gilmer, 500 U.S. at 24-25 (noting that the purpose of the FAA, which mandates a "'liberal federal policy favoring arbitration agreements,'" was to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts") (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24 (1983)). This "[i]s at bottom a policy guaranteeing the enforcement of private contractual arrangements." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985).

The Supreme Court and the District of Columbia Circuit have both held that the provisions of the FAA are applicable to agreements to arbitrate contained in employment contracts. See, e.g., Circuit City Stores, Inc., v. Adams, 532 U.S. 105, 123 (2001) ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA

without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law . . . . "); <u>Gilmer</u>, 500 U.S. at 26 ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."); <u>Cole v. Burns Int'l Sec. Servs.</u>, 105 F.3d 1465, 1470 (D.C. Cir. 1997) ("We hold that <u>section 1</u> of the FAA does not exclude all contracts of employment that affect commerce . . . ."). Moreover, a wide variety of statutory claims, including Title VII claims, may be subject to an arbitration agreement. <u>See, e.g.,</u> <u>Circuit City</u>, 532 U.S. at 110 (noting that claims arising under California's Fair Employment and Housing Act are subject to arbitration); <u>Booker</u>, 315 F. Supp. 2d at 94 (noting that the plaintiff's claim of a violation of the District of Columbia Human Rights Act is subject to arbitration); <u>Emeronye v. CACI Int'l, Inc.</u>, 141 F. Supp. 2d 82, 87 (D.D.C. 2001) (holding that Title VII and 42 U.S.C. § 1981 claims can be subject to arbitration agreements). In <u>Mitsubishi</u>, the Supreme Court held that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in arbitral, rather than a judicial, forum." 473 U.S. at 628.

<u>      </u>**(A)     The Employment Agreement is a Binding Contract**

The Court, in determining whether the arbitration agreement is a valid contract, must "'apply ordinary state law principles that govern the formation of contracts.'" <u>Emeronye</u>, 141 F. Supp. 2d at 86 n.3 (citing <u>First Options of Chicago, Inc., v. Kaplan</u>, 514 U.S. 938, 944 (1995)). Paragraph sixteen of the plaintiff's EA contains a specific provision stating that Virginia state law governed the contract. Defs.' Mem., Ex. A ¶ 16. However, in his complaint, the plaintiff, while not explicitly stating that District of Columbia law is controlling, seems to imply its authority by invoking the DCHRA. Compl. ¶ 26. Because this Court concludes that the

arbitration clause contained in the EA is enforceable under both District of Columbia and Virginia law, it is unnecessary to decide which law specifically governs the EA.

Under the laws of either jurisdiction, a "signature on a contract indicates 'mutuality of assent' and a party is bound by the contract unless he or she can show special circumstances relieving him or her of such an obligation." Emeronye, 141 F. Supp. 2d at 86; see also Nelson, 215 F. Supp. 2d at 152 (holding that the plaintiff's signature on an employment agreement indicates mutual assent unless duress is proven); Ayers v. Mosby, 504 S.E.2d 845, 848 (Va. 1998) (holding that "[i]n the absence of fraud, duress, or mutual mistake, a person having the capacity to understand a written instrument who reads it, or without reading it or having it read to [him], signs it, is bound by . . . [his] signature"). The plaintiff makes no allegations of duress or any other special circumstances that might justify this Court invalidating the contract. In fact, paragraph sixteen of the EA states, "[t]his Agreement, together with the terms of CACI's offer letter to me, is the complete agreement I have with CACI regarding the terms of my employment." Defs.' Mem., Ex. A ¶ 16.

The plaintiff argues, in vain, that the EA is not a contract, but rather a policy which does not bind either party and which this Court does not have the power to enforce. Pl.'s Opp'n at 2. A contract is "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law." Black's Law Dictionary 318 (7th Edition 1999); see Cherokee Nation of Okla. v. Leavitt, ___ U.S. ___, ___, 125 S. Ct., 1172, 1174 (2005) (noting that a contract refers to a promise "for the breach of which the law gives a remedy") Furthermore, an employment contract is a "contract between an employer and employee in which the terms and conditions of employment are stated." Black's Law Dictionary at 321. The EA

sets forth the specific terms and conditions of the plaintiff's employment, as well as obligations imposed by the agreement on both the plaintiff and CACI. Defs.' Mem., Ex. A ¶ 11. In addition, the plaintiff's signature and CACI's manager's signature on the EA indicates the intention of both parties to be bound by the terms of the EA. Therefore, the Court finds this to be not simply a policy statement, as the plaintiff contends, but a valid contract which binds both the plaintiff and the defendants to its terms. Therefore, the Court concludes that the plaintiff's EA is a valid, enforceable contract.

**(B)     The Arbitration Agreement Encompasses the Claims Raised by the Plaintiff**

As noted, it is well settled that claims arising under Title VII, the DCHRA, and the common law may be subject to arbitration. See, e.g., Emeronye, 141 F. Supp. 2d at 87 (enforcing arbitration of a Title VII claim); Booker, 315 F. Supp. 2d at 109 (upholding mandatory arbitration for a claim arising under the DCHRA); Nelson, 215 F. Supp. 2d at 145 (compelling arbitration for a common law claim). Furthermore, the EA's arbitration clause is clearly broad enough to encompass discrimination complaints based on "race, color, religion, [or] national origin." Defs.' Mem., Ex. A ¶ 11. However, in his opposition, the plaintiff contends that the arbitration agreement does not apply to his grievance because it does not cover claims brought by former employees who were terminated. Pl.'s Opp'n at 3.

The plaintiff contends that "[a]ny reasonable person who reads the arbitration provision could not be expected to see [its] language, and then interpret it so broadly as to determine that it covers . . . post employment." Id. This argument has no merit. It is a well-settled tenant of contract law that a person has a duty to read a contract, and that "[o]ne who signs a contract which he had an opportunity to read and understand is bound by its provisions. That [the

plaintiff] may not have comprehended the implications of his decision is irrelevant as to whether the agreement in valid." Nelson, 215 F. Supp. 2d at 151 (internal quotations omitted). The plaintiff's EA clearly covers post-employment arbitration. In unambiguous terms, the arbitration clause states: "[a]ny controversy or claim arising out of, or relating to this Agreement, or its breach, or otherwise arising out of or relating to my CACI employment (including . . . any claim of discrimination . . . based on race) . . . shall be settled first by resort to . . . arbitration." Defs.' Mem., Ex. A ¶ 11. Clearly, a dispute arising from the plaintiff's termination falls within CACI's EA's purview, which encompasses all controversies related to an employee's entire employment experience, from hiring to firing. Additionally, the plaintiff argues that compliance with the arbitration clause will "unduly prejudice him" since he is no longer employed by CACI. Pl.'s Opp'n at 3. However, courts have clearly held "that arbitration clauses do not 'unreasonably favor [] one party over the other.'" Brick v. J.C. Bradford & Co., 677 F. Supp. 1251, 1254 n.5 (D.D.C. 1987) (citation omitted). Thus, it is clear that the plaintiff would not be prejudiced by enforcing the arbitration provision in the EA.

**(C)   The EEOC Process Does Not Supercede the Arbitration Clause**

Having concluded that the EA is a valid contract and that the arbitration clause encompasses the plaintiff's grievance arising from his termination, the Court will now address the plaintiff's remaining challenge to the defendants' motion to compel arbitration, i.e., whether the EEO process supercedes the arbitration clause. Pl.'s Opp'n at 1-2.

The plaintiff argues that because he utilized the EEO process to pursue his Title VII challenge, and because the EEOC issued a "right to sue letter," he does not have to comply with the arbitration agreement contained in the EA. Id. at 1-2. In Gilmer, the Supreme Court rejected

a similar argument. In that case, the plaintiff alleged that enforcing an arbitration clause undermined the role of the EEOC in enforcing the Age Discrimination in Employment Act of 1967 ("ADEA"). 500 U.S. at 28. Despite the fact that the plaintiff in Gilmer had filed a complaint with the EEOC, the Supreme Court concluded that the "EEOC's role in combating age discrimination is not dependent on the filing of a [judicial] charge," and that the "mere involvement of an administrative agency in the enforcement of a statute is not sufficient to preclude arbitration." Id. at 28-29. Similarly, in the case at bar, the plaintiff filed a Title VII complaint with the EEOC. However, as Gilmer makes clear, such a filing does not negate the applicability of the arbitration clause. Furthermore, another member of this Court has rejected similar attacks on employment based arbitration agreements, holding that such agreements do not constitute waivers of congressionally mandated, substantive rights, but rather, arbitration agreements subject these rights to a different forum. See Emeronye, 141 F. Supp. 2d at 87 (holding that the "plaintiff's waiver of the judicial forum is valid under applicable contract law and is not subject to any additional requirements"); see also Circuit City Stores, 532 U.S. at 123 (noting that "arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law"). Therefore, although the plaintiff choose to participate in the EEO process, he still must submit his complaint to the forum in which he agreed to resolve potential employment disputes.

**(D)     The Defendants have not Waived their Right to Arbitration**

The plaintiff also posits that the defendants waived any right to arbitration by not raising the issue during the EEO process. Pl.'s Opp'n at 1-2. The plaintiff's statutory right to file a

discrimination complaint with the EEOC, 42 U.S.C. § 2000e-5, is separate from his contractual agreement to arbitrate. In EEOC v. Frank's Nursery & Crafts, Inc., 177 F.3d 448 (6th Cir. 1999), the Sixth Circuit held that Title VII bestows a separate interest and "independent right to eradicate employment discrimination on behalf of the public interest." Id. at 455; see also EEOC v. Air Line Pilots Ass'n, 885 F. Supp. 289, 291 (D.D.C. 1995) (noting that section 706(f)(1) of Title VII grants the EEOC authority to investigate and bring a discrimination claim in its own name). The EEOC's interest in eliminating workplace discrimination is distinguishable from the private cause of action Title VII affords individuals to personally pursue discrimination claims. Id. For example, in Frank's Nursery, the Sixth Circuit held that a plaintiff's agreement to arbitrate discrimination claims did not "divest the EEOC of that congressional grant of authority." Frank's Nursery, 177 F.3d at 455. Rather, "[w]hile the EEOC acts . . . as the representative of an aggrieved individual . . . [it] never ceases to represent the public interest." Id. at 458. In fact, Title VII creates a private cause of action for an individual claiming employment discrimination, which is "apart from any action the statute entitles the EEOC to bring." Id. at 455. Therefore, the EEOC may pursue allegations of discrimination against CACI independent from the plaintiff.

The defendants were also not required to raise the arbitration issue during the EEOC process because it did not involve the EEOC. See Brennan v. King, 139 F.3d 258, 263 (1st Cir. 1998) (holding that arbitration arguments do not constitute a relevant defense before the EEOC). The Brennan Court noted that "it is to judicial, rather than administrative, proceedings that we look to determine whether such a waiver has occurred." Id. at 264. In the case at bar, the defendants promptly filed a motion to compel arbitration in their initial response to the filing of

this action. Defs.' Mot. at 2. Since there was no delay in filing its motion to dismiss and compel arbitration, there was no waiver of the parties' arbitration clause by CACI. See Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 807 F.2d 16, 18 (1st Cir. 1986) (holding that a waiver did not occur when arbitration defense was raised promptly). Additionally, because the EA's arbitration clause only pertains to the plaintiff's individual cause of action, and not to the EEOC's interest in providing a work environment free from discrimination, the arbitration agreement encompassed and contractually bound the plaintiff as a CACI employee, not the EEOC. Thus, CACI's participation in the EEOC process was also independent from the plaintiff's right to individually pursue relief, and therefore did not amount to a waiver of the EA's arbitration clause.

Furthermore, the District of Columbia Circuit has held that in determining whether a party has waived its right to arbitrate, a court should employ the totality of the circumstances test to assess whether the party has "'acted inconsistently with the arbitration right.'" Brick, 677 F. Supp. at 1258 (quoting National Found. for Cancer Research v. A.G. Edwards & Sons, Inc., 821 F.2d 772, 774 (D.C. Cir. 1987)). Here, the plaintiff has provided no evidence to support his contention that CACI has waived its right to arbitration. Rather, he merely concludes that their participation in his statutorily guaranteed right amounted to a waiver. But in fact, upon receiving notice of the plaintiff's suit, the defendants immediately filed their motion to compel arbitration. Therefore, the totality of the circumstances contradict the plaintiff's waiver argument and this Court must conclude that CACI's right to arbitration is preserved.

### VI.   Conclusion

For the aforementioned reasons, the Court finds that the plaintiff entered into a valid,

enforceable employment contract which contained an arbitration agreement encompassing controversies arising from employment termination.  This agreement is independent from the EEOC process commenced by the plaintiff, and it provides a suitable, alternative forum in which to resolve the issues asserted in his complaint.  Therefore, the plaintiff must submit his dispute with CACI to mediation, and if necessary, to arbitration.  Accordingly, this case is dismissed.

SO ORDERED this 22nd day of July, 2005.[4]

REGGIE B. WALTON
United States District Judge

---

[4] An Order consistent with this Memorandum Opinion accompanies this opinion.